# Penn Electrical Engineering Co. v. Penn Silk Throwing Co., Appellant.

*Corporations — Contract by organizers before incorporation — Principal and agent—Ratification of contract—Construction of contract—Approximate price.*

1. Where, in a writing, a seller quotes a specific price for motors and states that it is "estimated that the installation would run approximately to" an amount stated, and the purchaser answers that he accepts the recommendation and that "it is understood that you will use every endeavor to keep the cost of this job as low

as possible," the writings will not be construed as an undertaking by the seller to install the motors for a specific sum.

2. Where the organizers of a corporation authorize one of their number to enter into a contract for an equipment plant, and he does so, and the company accepts the plant after incorporation, it is bound by the contract without any express corporate action; there was at least constructive knowledge of it.

Argued May 26, 1924. Appeal, No. 40, Jan. T., 1925, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1920, No. 1045, in case tried by court without jury, in suit of Penn Electrical Engineering Co. v. Penn Silk Throwing Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit, tried by court without jury. Before FULLER, P. J.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff for $2,698.40. Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*Mulford Morris,* with him *Henry A. Gordon* and *A. L. Williams,* for appellant, cited, as to agency: Deliman v. Greek Catholic Union, 275 Pa. 571; Mintzer & Kneisler v. Schwarzschild & Sulzberger Co., 55 Pa. Superior Ct. 534; Thrall v. Wilson, 17 Pa. Superior Ct. 376; Shields v. Hitchman, 251 Pa. 455; Bell's Gap R. R. v. Christy, 79 Pa. 54; Tygert-Allen Fertilizer Co. v. Tygert Co., 191 Pa. 336; Tift v. Bank, 141 Pa. 550; Bonner v. Hotel Co., 276 Pa. 492.

*James P. Harris,* with him *Walter S. Bevan* and *B. W. Davis,* for appellee, cited as to ratification: Pittsburgh Trust Co. v. Lappe, 216 Pa. 549; Gerard v. Case Bros. Co., 225 Pa. 327; Bell's Gap. R. R. v. Christy, 79 Pa. 54; Beltz v. Garrison, 254 Pa. 145.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, July 8, 1924:

This case was tried without a jury under the Act of 1874; the court below found in favor of plaintiff and entered judgment accordingly; defendant has appealed.

In the spring of 1919, five individuals, including George E. Day and W. B. Lovatt, associated themselves together with the intention of forming a Pennsylvania corporation to manufacture silk. Later in the year, they secured a charter from the State; but, before incorporation, about May 1, 1919, the organizers of the proposed company authorized their associates, Day and Lovatt, to get bids for electrical equipment and installation of a plant. The latter obtained from plaintiff company, through its representative, Dietrick, certain written "recommendations" as to the machinery to be installed in the proposed plant, wherein he "quoted a price of $1,600" for motors, and "estimated that the installation would run approximately [to] $1,000." To this communication, plaintiff received a written reply, which defendant acknowledges to have been sent in its behalf, wherein it was stated, "We hereby accept your recommendation as to the electrical equipment and installation......It is understood that you will use every endeavor to keep the cost of this job as low as possible."

Before any deliveries were made or actual installation entered upon, it developed that the "three-phase" system (which was in common use in the region of defendant's proposed plant, and was the one estimated on by plaintiff, though not particularly mentioned in the writings between the parties) could not be employed because the proper current for its use was unobtainable from the electric company which furnished the power; so it became necessary to change to a "two-phase" system.

The interview in which the change of plan was discussed and agreed upon took place between Dietrick, Lovatt and a representative of the electric company; at this meeting Dietrick informed Lovatt the installation

would be much more costly than the system estimated on, but the latter told the former to "go ahead." There was no direct proof that Lovatt had been especially authorized by defendant or its organizers to agree to such change, but it did appear that, from the beginning, he was the sole representative of the defendant concern, and those interested in its organization, at Wilkes-Barre, where the proposed plant was to be located; that he had been given authority to enter into the original negotiations with plaintiff's representative; and that the motors, subsequently delivered and paid for by defendant, though of the two-phase variety, were retained and used by it.

This contest is not over the cost of the motors, but the expense of installation, which was more than double what it would have amounted to had it been possible to use the three-phase, instead of the two-phase, system. There was ample evidence, however, to account for this increased cost and to show that the work was done at or below market prices, for both material and labor furnished; as to this, the court below found that "the fair value" of the materials "furnished by plaintiff and retained by defendant," including cost of installation and interest, "amounted to $4,093.40, whereof the first invoice for delivery, consisting of two motors for $1,395, was paid by defendant, leaving a balance of $2,698.40" which it concluded plaintiff was entitled to recover.

Appellant contends (1) that the original writings, hereinbefore recited, constitute a contract on plaintiff's part to furnish motors at a named sum, and to install them for $1,000: (2) that plaintiff was never released from the latter obligation by any new contract entered into by one authorized to represent defendant. The answer to these contentions are, first, that, as to the installation, the writings furnish a mere estimate and do not make a contract binding plaintiff to do the work for $1,000 or any other given sum; next, there is ample evidence to show that Lovatt was in charge for defendant,

with at least implied authority to proceed as he did, and that he instructed plaintiff to go ahead with the work when he was informed and knew the change of system agreed to by him would greatly increase the cost of installation over the figure mentioned in plaintiff's estimate. In this connection, the court below well states: Though "no express corporate action was ever taken by defendant in the premises,.....Lovatt was its representative on the ground in charge of the matter, and, after incorporation, with at least constructive knowledge by defendant, plaintiff furnished the labor, materials and machinery" in question, for which,—there being no over-reaching or deception in the transaction,—it is entitled, both in law and equity, to be paid the fair prices charged.

The judgment is affirmed.